IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOBY GODFREY, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-CV-280-NJR-DGW |
| | ) |
| RICHARD HARRINGTON, | ) |
| TRACY HEIMAN, FRANK EOVALDI, | ) |
| and MICHAEL MOLDENHAUER, | ) |
| | ) |
|       Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 78), recommending that the Motion for Summary Judgment on the issue of exhaustion filed by Defendants Richard Harrington, Tracy Heiman, and Frank Eovaldi (Doc. 63) be denied. The Report and Recommendation was entered on August 27, 2014, and Defendants filed a timely objection (Doc. 80).

Because timely objections were filed, the undersigned must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). *De novo* review requires the district judge to "give fresh consideration to those issues to which specific objections have been made" and make a decision "based on an independent review of the evidence

and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Harper*, 824 F. Supp. at 788. For the reasons stated below, the Court overrules Defendants' objections and adopts the Report and Recommendation of Magistrate Judge Wilkerson.

## BACKGROUND

Plaintiff Toby Godfrey, an inmate in the Illinois Department of Corrections, is currently incarcerated at Lawrence Correctional Center. He filed this action on March 20, 2013, alleging that his constitutional rights were violated during his incarceration at Menard Correctional Center. In particular, he alleges that he was attacked by his cellmate on March 4, 2013. He claims that Defendants Traci Heiman and Frank Eovaldi, who are correctional officers at Menard, failed to protect him from the attack (Doc. 13). He further alleges that Defendant Michael Moldenhauer, a medical doctor, failed to provide adequate medical care after he was attacked (Doc. 13; Doc. 86). Godfrey did not state any viable claim against Richard Harrington, the warden at Menard, but Harrington remained in the action as a defendant in his official capacity for the purpose of injunctive relief (Doc. 13)

On February 20, 2014, Defendants Harrington, Heiman, and Eovaldi filed a Motion for Summary Judgment on the issue of exhaustion (Doc. 63). They assert that there is one relevant grievance dated March 28, 2013, which Godfrey submitted directly

to the ARB. They argue that Godfrey failed to exhaust that grievance because he submitted it after he had already filed suit.

As required by *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), Magistrate Judge Wilkerson held an evidentiary hearing on the issue of exhaustion on April 17, 2014 (Doc. 73). At the hearing, Godfrey testified that the March 28th grievance was not the only relevant grievance (Doc. 78). He claimed that he submitted an emergency grievance on March 4, 2013, to Warden Harrington but never received a response (Doc. 78). Following the hearing, Godfrey submitted to the Court a copy of the March 4th grievance (Doc. 75). Magistrate Judge Wilkerson then issued the Report and Recommendation currently before the Court (Doc. 78).

### THE REPORT AND RECOMMENDATION AND OBJECTIONS

Magistrate Judge Wilkerson found that the March 28th grievance that Godfrey submitted directly to the ARB was not relevant to the issue of exhaustion because it was filed eight days after Godfrey filed this lawsuit (Doc. 78). Accordingly, the question of whether Godfrey exhausted his administrative remedies came down to the March 4th grievance. Magistrate Judge Wilkerson found Godfrey credible in his assertion that he filed this grievance. It was marked as an emergency and stated that Godfrey told Defendants Heiman and Eovaldi that he was being threatened by his cellmate and needed to be moved. Both Defendants, however, refused to move Godfrey, and he was attacked by his cellmate. The grievance further states that Godfrey suffered significant injuries and was not given proper medical care.

Magistrate Judge Wilkerson noted that there was no indication on the March 4th

emergency grievance that the warden responded. Godfrey waited in vain for sixteen days for a response from the warden and then filed suit. Magistrate Judge Wilkerson concluded that sixteen days was a sufficient period of time to wait for a response, and the failure to provide a response within that time rendered the grievance process unavailable to Godfrey. Therefore, Godfrey should be deemed to have exhausted his administrative remedies.

Defendants had no objections to Magistrate Judge Wilkerson's factual findings, but they objected to his conclusion of law that Godfrey waited long enough before filing suit (Doc. 80). Defendants point out that resource and staffing limitations in the IDOC, in combination with increasingly larger quantities of grievances, has created a backlog and more time is required to respond to each grievance. They argue that "sixteen days is still within a reasonable time period to respond to an emergency grievance, and prisoners should be required to wait longer than that before filing their federal lawsuits" (Doc. 80).

## DISCUSSION

Based on Defendants' objection to the Report and Recommendation, the Court must determine whether the warden's failure to respond to Godfrey's emergency grievance within sixteen days rendered the grievance process unavailable, which in turn permitted him to file suit.

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before bringing a civil rights lawsuit. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524 (2002). But prisoners "must exhaust only those administrative remedies that are available." *Lewis v. Washington*, 300 F.3d 829, 833

(7th Cir. 2002). Administrative remedies become "unavailable" if prison officials fail to respond to an inmate's grievances. *Id.*; *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). "Exhaustion is 'an affirmative defense that the defendants have the burden of pleading and proving.'" *Brengettcy*, 423 F.3d at 682 (quoting *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004)).

As an inmate confined in the Illinois Department of Corrections, Woods was required to follow the grievance process outlined in the Illinois Administrative Code ("the Code") to properly exhaust his claims. Pertinent to this case is the regulation regarding emergency procedures. ILL. ADMIN. CODE, tit. 20, § 504.840. Under § 504.840, a prisoner can request a grievance be handled on an emergency basis by forwarding the grievance directly to the warden. *Id.* The warden then reviews the grievance to determine if it is truly an emergency. *See Id.* If the warden determines there is "a substantial risk of imminent personal injury or other serious or irreparable harm," the warden "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." *Id.* If the warden determines that the grievance is not based on an emergency, the inmate may appeal to the ARB. *Id. at* § 504.850(a), (g).

The Code previously required the warden to respond within three days after receipt of the emergency grievance whenever possible. *See* 22 Ill. Reg. 1206 (January 9, 1988) (amending § 504.840 and adding three-day response deadline). That requirement was removed from the regulation in 2001, however, and now there is no prescribed deadline for the warden to respond to an emergency grievance. *See* 25 Ill. Reg. 10775

(Aug. 24, 2001) (amending § 504.840 and deleting the three-day response deadline effective September 1, 2001); ILL. ADMIN. CODE, tit. 20, § 504.840. Accordingly, based on the Code, it is not clear how long inmates must wait to receive a response when using the emergency grievance process.

Relevant case law is extremely limited and only marginally helpful. Case law makes clear that inmates do not have to wait indefinitely for a response to an emergency grievance. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (holding the PLRA does not allow prison officials to "exploit the exhaustion requirement through indefinite delay in responding to grievances"). But it is far less clear just exactly how long an inmate does have to wait. As Magistrate Judge Wilkerson noted, the Seventh Circuit has implied that inmates must wait more than two days for a response to their emergency grievance but less than fifty-one before they can file suit. *See Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1174–75 (7th Cir. 2010) (concluding inmate had to wait more than two days to file suit after submitting emergency grievance, particularly because "the danger [was] not of the greatest urgency."); *Muhammad v. McAdory*, 214 Fed. App'x. 610, 611, 613 (7th Cir. 2007) (concluding that a genuine issue of material fact existed regarding whether prison officials thwarted the inmate's efforts to exhaust when they did not respond to his emergency grievance within fifty-one days).

Defendants agree with this general parameter, but they argue—without any citation to supporting authority—that Godfrey should have waited longer than sixteen days. The Court disagrees. Godfrey submitted his emergency grievance on March 4, 2013. Sixteen days ticked by without a response, leaving Godfrey to wonder when, if

ever, he might receive a response. Considering the emergency grievance process is designed to remedy *imminent* dangers, Godfrey was completely justified in expecting some sort of response within sixteen days. And when he did not receive one, he was likewise justified in assuming his emergency grievance was lost or ignored and that the grievance process had become unavailable. *See Merritte v. Godinez*, Case 3:12-cv-263-JPG-PMF (S. D. Ill.) (Doc. 72) (finding that defendants did not show inmate failed to exhaust when he feared for his life and he waited thirteen days for a response to his emergency grievance before filing suit); 28 C.F.R. § 542.18 (federal regulation requiring BOP to respond to emergency grievances within three days).

Simply put, Defendants cannot expect to kick Godfrey out of court because he failed to follow an unwritten, nebulous rule, especially when they cannot even articulate the boundaries of the rule. The grievance process is not intended to be a game of "gotcha" or "a test of the prisoner's fortitude or ability to outsmart the system." *Shaw v. Jahnke*, 607 F. Supp. 2d 1005, 1010 (W.D. Wis. 2009) (citation omitted) *See also LaFauci v. New Hampshire Dep't of Corr.*, No. CIV.99-597-PB, 2005 WL 419691, at *14 (D.N.H. Feb. 23, 2005) ("While proper compliance with the grievance system makes sound administrative sense, the procedures themselves, and the directions given to inmates seeking to follow those procedures, should not be traps designed to hamstring legitimate grievances.") Rather, the grievance process is meant to provide notice to prison administrators of a problem so that they have an opportunity to address it without litigation. *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002).

Godfrey did just that—he gave the prison a chance to address his emergency

grievance. But the warden dawdled in doing so, and Godfrey was left in the dark and forced to make a blind guess as to whether he had waited long enough to file suit. It was the warden's silence rather than any negligence or manipulation on Godfrey's part that prevented him from completing the grievance process. Thus, it cannot be said that he failed to exhaust his administrative remedies, and Defendants are not entitled to summary judgment. To hold otherwise would penalize Godfrey for the inaction of the warden and allow the warden to exploit the exhaustion requirement by delaying his response to emergency grievances.

## CONCLUSION

The Court **ADOPTS** Magistrate Judge Wilkerson's Report and Recommendation (Doc. 78). Defendants' Motion for Summary Judgment on the issue of exhaustion (Doc. 63) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:   March 16, 2015**

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**